**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel:   212-885-5000
Fax:   212-885-5001
Ira L. Herman
Evan J. Zucker

*Special Litigation Counsel for Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

| | |
|---|---|
| In re: | Chapter 11 |
| WANSDOWN PROPERTIES CORPORATION N.V., | Case No.:  19-13223 (SMB) |
| Debtor. | |

------------------------------------------------------------------ x

| | |
|---|---|
| WANSDOWN PROPERTIES CORPORATION N.V., | |
| Plaintiff | |
| v. | Adv. Pro. No. 19-1450 |
| AZADEH NASSER AZARI, | |
| Defendant. | |

------------------------------------------------------------------ x

## SECOND AMENDED ADVERSARY COMPLAINT

Wansdown Properties Corporation N.V. (the "**Debtor**" or "**Plaintiff**"), by and through its undersigned counsel, as and for its complaint against defendant Azadeh Nasser Azari, alleges as follows:

### NATURE OF THE ACTION

1.     This is an action to avoid a fraudulent conveyance:  the execution of an affidavit of confession of judgment and the resulting judgment in favor of the defendant, Azadeh Nasser Azari,

in exchange for insufficient consideration. Azari prevailed upon her long-time supervisor and friend, Gholam Reza Golsorkhi ("**Golsorkhi**"), to execute the affidavit of confession of judgment for $2.7 million in favor of Azari out of loyalty, friendship or to avoid a confrontation. In any event, Azari did not give reasonably equivalent value to the Plaintiff in exchange for the debt obligation created by the affidavit of confession of judgment, nor was it given in satisfaction of any debt owed by the Plaintiff to Azari.

2. Through this action, Plaintiff seeks to avoid the transfers effected by the affidavit of confession of judgment and docketing of the judgment as constructive fraudulent conveyances for the benefit of Plaintiff's estate and creditors.

## PARTIES

3. Plaintiff Wansdown Properties Corporation N.V. is a limited liability company incorporated under the laws of Curacao, with its principal place of business at 29 Beekman Place, New York, NY 10022.

4. Defendant Azadeh Nasser Azari ("**Azari**" or "**Defendant**"), upon information and belief, resides at 360 East 55th Street, Apartment 13H, New York, NY 10022.

5. Azari is a former employee of Plaintiff.

## JURISDICTION AND VENUE

6. The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334.

7. This is a core proceeding under 28 U.S.C. § 157(b)(2).

8. Plaintiff confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by the Court in connection with this Complaint to the extent that it is later determined that the Court, absent

consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

10. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 502(b), 502(d), and 544(b), and N.Y. Debt. & Cred. Law §§ 273, 275, 278 and 279.

11. This adversary proceeding concerns the chapter 11 case *In re Wansdown Properties Corporation N.V.*, Case No. 19-13223 (SMB) currently pending before the Court.

## FACTUAL BACKGROUND

### I. Plaintiff's History and Operations

12. Plaintiff was incorporated in 1979 to, among other things, invest and manage the assets of Princess Achraf Pahlavi.

13. Plaintiff's principal asset and place of business is a residential townhouse located on Beekman Place in Manhattan (the "**Townhouse**").

14. Plaintiff is incorporated in Curaçao under Article 38 of the Commercial Code of the Netherlands Antilles, and continues to exist under the laws of Curaçao.

15. Plaintiff is, and has been since its inception, owned by a trust entitled Pelmadulla Stiftung (the "**Foundation**"), formed under the laws of the country of Lichtenstein and is domiciled in Vaduz, Lichtenstein.

16. Golsorkhi was hired by the Princess, in or about 1970, in Iran to manage her personal affairs. When the Princess fled Iran during the Iranian revolution, Golsorkhi continued to work for her in Europe and the United States.

17. Golsorkhi became a Managing Director of Plaintiff in 1979, together with Netherland Antilles Corporation Company, N.V.

3

18. Golsorkhi is not, and has never been, a shareholder of Plaintiff.

19. In 1979, Golsorkhi hired Azari to work for Plaintiff as a secretary and she later became the Plaintiff's office manager.

20. At all times relevant Azari was an at-will employee of the Plaintiff.

21. Prior to the signing of the Affidavit (as herein defined), Azari did not have any severance agreement with Plaintiff regarding her employment or her compensation.

22. The Foundation is the sole shareholder of Plaintiff.

23. During the final years of her life, the Princess's advanced age and deteriorating health resulted in the Princess spending limited time in New York. Accordingly, Plaintiff's need for staff at the Townhouse decreased significantly, and the Foundation sought to reduce Plaintiff's expenses, including by reducing and/or terminating the salaries of staff members like Azari.

24. The Princess died in January 2016. At the time of the Princess' death, Azari was earning $9,000 a month for her services to Plaintiff. Notwithstanding the Princess' death and the decreased need for staff at the Townhome, Azari's employment was maintained with Plaintiff at the reduced salary of $6,000 per month in the summer of 2016.

25. In the fall of 2016, the need for staff at the Townhome further decreased. Nevertheless, Azari's employment continued with Plaintiff at the reduced salary of $2,000 per month starting in December 2016.

26. In or around December 2016, Azari chose to terminate her employment with Plaintiff.

27. In or around 2016, the Plaintiff was insolvent. The sum of its debts exceeded that of its assets and income in that the Townhouse was mortgaged, it had continuing payroll obligations and obligations to other creditors, and had liens and warrants issued and recorded

against its property by the Commissioner of Labor, State of New York resulting from its inability and failure to timely pay the amounts owed to the State.

28. In or around 2016, the Townhouse produced no income for the Plaintiff, and the Plaintiff did not therefore have adequate capital at the time the debts were incurred to satisfy such liabilities.

29. In or around 2016, as a result of the Plaintiff's lack of cash or income, Golsorkhi advanced funds to the Plaintiff to meet some of its debt obligations.

II. **Azari Procures a Confession of Judgment for No Consideration**

30. On February 10, 2016, Golsorkhi signed an Affidavit of Confession of Judgment on behalf of Plaintiff in favor of Azari (the "**Affidavit**").

31. The Affidavit states that Plaintiff was confessing a judgment in favor of Azari in the amount of $9,000 per month for the remainder of Azari's life or a lump sum of $2.7 million, purportedly in exchange for Azari's prior loyalty to the Princess and the Plaintiff. The Affidavit recites no other consideration.

32. At the time Golsorkhi signed the Affidavit, Debtor was not indebted to Azari in the amount set forth in the Affidavit.

33. Upon information and belief, the Affidavit was drafted by Azari's son and attorney, Nader Mobargha, Esq. ("**Mobargha**").

34. On February 10, 2016, the same day the Affidavit was executed, Golsorkhi sent on behalf of the Debtor an email to Bunyamin Taskapan, a lawyer for the managing agent for Pelmadulla, bringing to Taskapan's attention "once again" the outstanding sums that the Plaintiff owes and has been unable to pay since at least November 2015. A true and correct copy of the email is attached hereto as Exhibit A.

35. On February 10, 2016, the Plaintiff owed its creditors over $330,000 and had no cash or ability to pay for these expenses.

36. At the time the Affidavit was signed, the Plaintiff was insolvent or rendered insolvent and had no cash or income.

37. At the time the Affidavit was signed, the Plaintiff was not paying its bills as they became due.

38. At the time the Affidavit was signed, the Townhouse was the subject of a mortgage, the Plaintiff had ongoing payroll obligations and obligations to other creditors.

39. At the time the Affidavit was signed, non-consensual liens and warrants had been filed and recorded encumbering the Plaintiff's property.

40. On the date and at the time the Affidavit was signed and the email was sent to Mr. Taskapan, the Debtor and Golsorkhi knew or believed that the Debtor had or would incur debts beyond its ability to pay as such debts matured in as much as the Debtor had no income, no regular source of financing, and no liquidity.

41. Since 2014, the Debtor has been unable to consummate a sale of the Townhouse.

42. On the date and at the time the Affidavit was signed and the email was sent to Mr. Taskapan, the Debtor and Golsorkhi knew or believed that the Debtor did not have any income, and knew or believed that the Debtor would not in the future have any regular income to pay the Debtor's debts as they matured.

43. On the date and at the time the Affidavit was signed and the email was sent to Mr. Taskapan, the Plaintiff's property was insufficient to pay the Plaintiff's liabilities on its then existing debts as they matured and became due as, Plaintiff continued to seek money in the form of debt and equity to enable it to pay its debts as they became due.

44. On February 12, 2016, Mobargha filed the Affidavit in the Supreme Court of the State of New York on behalf of Plaintiff.

45. Based on the Affidavit, on April 21, 2016, the Clerk of the Court entered a judgment in favor of Azari and against Wansdown Properties in the amount of $2.7 million, plus $225 for filing fees (the "**Judgment**").

46. At the time the Judgment was entered, the Plaintiff was insolvent or rendered insolvent.

47. At the time the Judgment was entered, the Plaintiff was not paying its bills as they became due.

48. At the time the Judgement was entered, the Townhouse was the subject of a mortgage, the Plaintiff had ongoing payroll obligations and obligations to other creditors.

49. At the time the Judgment was entered, non-consensual liens and warrants had been filed and recorded encumbering the Plaintiff's property.

50. At the time the Judgment was entered, the Debtor and Golsorkhi knew or believed that the Debtor had or would incur debts beyond its ability to pay as such debts matured in as much as the Debtor had no income, no regular source of financing, and no liquidity.

51. Since the time the Judgment was entered, the Debtor has been unable to consummate a sale of the Townhouse.

52. At the time the Judgment was entered, the Debtor and Golsorkhi knew or believed that the Debtor did not have any income, and knew or believed that the Debtor would not in the future have any regular income to pay the Debtor's debts as they matured.

53. At the time the Judgment was entered, the Plaintiff's property was insufficient to pay the Plaintiff's liabilities on its then existing debts as they matured and became due as, Plaintiff

7

continued to seek money in the form of debt and equity to enable it to pay its debts as they became due.

54. On November 3, 2016, Mobargha served notice of entry of the Judgment on Plaintiff.

55. The Debtor had no legal obligation to provide the Affidavit or the Judgment to Defendant

56. When the Affidavit was signed and when the Judgment was entered, and at all relevant times thereafter, the Townhouse did not generate income, and the Debtor lacked sufficient funds to pay its debts such as real estate taxes or mortgage payments as they matured.

57. When the Affidavit was executed and when the Judgment was entered, and at all relevant times thereafter, given the Debtor's lack of adequate cash to pay its debts, and as a last resort, Golsorkhi had to advance funds to Debtor to pay the carrying costs of the Townhouse and other obligations of the Debtor.

58. When the Affidavit was executed and when the Judgment was entered, and at all relevant times thereafter, the Debtor was failing to timely pay its obligations.

59. When the Affidavit was signed and when the Judgment was entered, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor after the conveyance constituted unreasonably small capital.

60. When the Affidavit was signed and when the Judgment was entered, the Debtor had incurred, intended to incur, or believed the Debtor would incur, debts that would be beyond the Debtor's ability to pay as those debts matured.

61. The Affidavit was not signed, and the Judgment was not entered, on account of an antecedent debt owed by Debtor to Defendant.

### III. Plaintiff Seeks to Vacate the Judgment

62. On February 13, 2017, Plaintiff filed a plenary action in the Supreme Court of the State of New York against Azari seeking to vacate the Judgment.

63. In its complaint, Plaintiff asserted that Golsorkhi did not have the authority to bind Plaintiff by signing the Affidavit.

64. Azari moved to dismiss the complaint on the basis that Plaintiff's controlling corporate documents provided Golsorkhi, in his position as president and managing director, with the authority to bind Plaintiff.

65. On October 17, 2017, the Supreme Court denied Azari's motion to dismiss, holding that Azari had not conclusively established her position with documentary evidence, and that Wansdown had stated a cause of action. In particular, the Supreme Court recognized that the key factual issue in the case was whether Golsorkhi had the authority to sign the Affidavit was a factual issue which needed to be addressed at trial.

66. On November 10, 2017, Azari filed a Notice of Appeal of the Supreme Court's Order to the Appellate Division First Department.

67. On November 18, 2018, the First Department reversed and dismissed Plaintiff's complaint, holding that Plaintiff's corporate documents refuted Plaintiff's claim that Golsorkhi lacked authority.

### IV. Plaintiff's Bankruptcy Filing

68. On October 8, 2019 (the "**Petition Date**"), Plaintiff filed a voluntary petition for relief under chapter 11 of the title 11 of the United States Code (the "**Bankruptcy Code**") in this

9

Court. Plaintiff continues to operate its business as a debtor in possession. No trustee has been appointed in this case and no Official Committee of Unsecured Creditors has been formed.

69. On November 6, 2019, the Court entered an order [D.I. 18] setting December 31, 2019, as the last day to file a proof of claim against Plaintiff.

70. Plaintiff filed its schedules of assets and liabilities on October 21, 2019 [D.I. 13]. As reflected in those schedules, there were and are creditors holding unsecured claims against Plaintiff that have not been satisfied.

71. On December 12, 2019, Azari filed a proof of claim alleging that she holds a secured claim in the amount of $3,605,152.23 based on the Judgment. *See* Claim No. 6.

72. The Bankruptcy Court entered its Order in the Debtor's case setting December 31, 2019 as the last date to file claims against the Debtor.

**FIRST CAUSE OF ACTION**
**(Avoidance of Fraudulent Conveyance Under 11 U.S.C. §§ 544(b) and
N.Y. Debt. & Cred. Law § 273, 278 and/or 279)**

73. Plaintiff repeats and realleges the allegations contained in all prior paragraphs as though fully set forth herein.

74. Plaintiff did not receive fair consideration for the obligation set forth in the Affidavit.

75. Plaintiff was insolvent at the time the Affidavit was executed or, in the alternative, Plaintiff became insolvent as a result of the execution of the Affidavit.

76. At all relevant times there was and is at least one creditor who held and holds matured or unmatured unsecured claims against Plaintiff that were and are allowable under section 502 of the Bankruptcy Code.

77. As a result of the foregoing, Plaintiff is entitled to judgment under sections 273, 278, and 279 of the New York Debtor and Creditor Law and section 544(b) of the Bankruptcy Code avoiding the obligation set forth in the Affidavit and directing that it be set aside.

### SECOND CAUSE OF ACTION
**(Avoidance of Fraudulent Conveyance Under 11 U.S.C. §§ 544(b) and N.Y. Debt. & Cred. Law § 273, 278 and/or 279)**

78. Plaintiff repeats and realleges the allegations contained in all prior paragraphs as though fully set forth herein.

79. Plaintiff did not receive fair consideration for entry of the Judgment.

80. Plaintiff was insolvent at the time the Judgment was entered or, in the alternative, Plaintiff became insolvent as a result of the entry of the Judgment.

81. At all relevant times there was and is at least one creditor who held and holds matured or unmatured unsecured claims against Plaintiff that were and are allowable under section 502 of the Bankruptcy Code.

82. As a result of the foregoing, Plaintiff is entitled to judgment under sections 273, 278, and 279 of the New York Debtor and Creditor Law and section 544(b) of the Bankruptcy Code avoiding the entry of the Judgment and directing that it be set aside.

### THIRD CAUSE OF ACTION
**(Avoidance of Fraudulent Conveyance Under 11 U.S.C. §§ 544(b) and N.Y. Debt. & Cred. Law § 275, 278 and/or 279)**

83. Plaintiff repeats and realleges the allegations contained in all prior paragraphs as though fully set forth herein.

84. Plaintiff did not receive fair consideration for the obligation set forth in the Affidavit.

85. Golsorkhi knew or believed on the date he executed the Affidavit that the Debtor would incur debts that would be beyond its ability to pay as they matured.

86. Plaintiff, on the date that Golsorkhi executed the Affidavit, intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

87. At the time the Affidavit was executed, Plaintiff had no income and no ability to pay its ordinary course obligations or the obligations in the Affidavit.

88. At all relevant times there was and is at least one creditor who held and holds matured or unmatured unsecured claims against Plaintiff that were and are allowable under section 502 of the Bankruptcy Code.

89. As a result of the foregoing, Plaintiff is entitled to judgment under sections 275, 278, and 279 of the New York Debtor and Creditor Law and section 544(b) of the Bankruptcy Code avoiding the obligation set forth in the Affidavit and directing that the Affidavit be set aside.

**FOURTH CAUSE OF ACTION**
**(Avoidance of Fraudulent Conveyance Under 11 U.S.C. §§ 544(b) and N.Y. Debt. & Cred. Law § 275, 278 and/or 279)**

90. Plaintiff repeats and realleges the allegations contained in all prior paragraphs as though fully set forth herein.

91. Plaintiff did not receive fair consideration for the entry of the Judgment.

92. At the time the Judgment was entered, Plaintiff had no income and no ability to pay its ordinary course obligations or the Judgment.

93. At all relevant times there was and is at least one creditor who held and holds matured or unmatured unsecured claims against Plaintiff that were and are allowable under section 502 of the Bankruptcy Code.

94. As a result of the foregoing, Plaintiff is entitled to judgment under sections 275, 278, and 279 of the New York Debtor and Creditor Law and section 544(b) of the Bankruptcy Code avoiding the entry of the Judgment and directing that it be set aside.

## FIFTH CAUSE OF ACTION
### (Avoidance of Fraudulent Conveyance Under 11 U.S.C. §§ 544(b) and N.Y. Debt. & Cred. Law § 274, 278 and/or 279)

95. Plaintiff repeats and realleges the allegations contained in all prior paragraphs as though fully set forth herein.

96. Plaintiff did not receive fair consideration for the entry of the Judgment.

97. At the time the Judgment was entered, Plaintiff as engaged in or was about to engage in a business or transaction for which the property remaining after the conveyance was an unreasonably small capital.

98. At all relevant times there was and is at least one creditor who held and holds matured or unmatured unsecured claims against Plaintiff that were and are allowable under section 502 of the Bankruptcy Code.

99. As a result of the foregoing, Plaintiff is entitled to judgment under sections 274, 278, and 279 of the New York Debtor and Creditor Law and sections 544(b) of the Bankruptcy Code avoiding the entry of the Judgment and directing that it be set aside.

## SIXTH CAUSE OF ACTION
### (Disallowance of Claim under 11 U.S.C. § 502(b) and (d))

100. Plaintiff repeats and realleges the allegations contains in all prior paragraphs as though fully set forth herein.

101. By proof of claim dated December 12, 2019 (the "**Claim**"), Azari has asserted a secured claim in the amount of $3,605,152.23 based on the Judgment.

102. The Claim is not supported by the books and records of Plaintiff and is only supported by the Affidavit and Judgment. To the extent the Affidavit and Judgment are avoided, the Claim must be disallowed.

103. As a result of the foregoing, Plaintiff is entitled to an order disallowing the Claim.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Azari:

1. avoiding the obligations created by the Affidavit as fraudulent conveyances under sections 273, 278, and 279 of the New York Debtor and Creditor Law and section 544(b) of the Bankruptcy Code;

2. avoiding the transfers represented by entry of the Judgment as fraudulent conveyances under sections 273, 278, and 279 of the New York Debtor and Creditor Law and section 544(b) of the Bankruptcy Code;

3. avoiding the transfers represented by entry of the Judgment as fraudulent conveyances under sections 274, 278, and 279 of the New York Debtor and Creditor Law and section 544(b) of the Bankruptcy Code;

4. avoiding the obligations created by the Affidavit as fraudulent conveyances under sections 275, 278, and 279 of the New York Debtor and Creditor Law and section 544(b) of the Bankruptcy Code;

5. avoiding the transfers represented by entry of the Judgment as fraudulent conveyances under sections 275, 278, and 279 of the New York Debtor and Creditor Law and section 544(b) of the Bankruptcy Code;

6. disallowing the Claims; and

7. granting Plaintiff such other and further relief as may be just and proper.

Dated: New York, New York
     May 20, 2020

                                    **BLANK ROME LLP**

                              By:   /s/ Ira L. Herman
                                    Ira L. Herman
                                    Evan J. Zucker

1271 Avenue of the Americas
New York, NY 10020
Tel: 212-885-5000
Fax: 212-885-5001

*Special Litigation Counsel for Plaintiff*