UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>WANSDOWN PROPERTIES CORPORATION, N.V.,<br><br>Debtor. | Case No. 19-13223-dsj |
| WANSDOWN PROPERTIES CORPORATION N.V.,<br><br>Plaintiff,<br><br>v.<br><br>29 BEEKMAN CORP.,<br><br>Defendant. | Adv. Pro. No. 20-01056 (DSJ) |
| WANSDOWN PROPERTIES CORPORATION N.V.,<br><br>Plaintiff,<br><br>v.<br><br>AZADEH NASSER AZARI,<br><br>Defendant. | Adv. Pro. No. 19-1450 (DSJ) |

## MEMORANDUM OF DECISION AND ORDER
## DENYING (WITHOUT PREJUDICE) MOTION FOR SANCTIONS

**APPEARANCES:**

**BLANK ROME LLP**
*Counsel for Debtor/Plaintiff in 19-1450 & 20-1056*
1271 Avenue of the Americas
New York, NY 10020
By:    Ira L. Herman, Esq.
         Deborah A. Skakel, Esq.

**BEYS LISTON & MOBARGHA LLP**
*Counsel for Defendant in 20-1450*
641 Lexington Avenue
New York, NY 10022
By:    Nader Mobargha, Esq.
         Alison Moss, Esq.

**LAW OFFICES OF CHRISTOPHER SERBAGI**
*Counsel for Defendant in 20-1056*
488 Madison Avenue
New York, NY 10022
By:    Christopher Serbagi, Esq.

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the joint motion of 29 Beekman Corp. ("Beekman") and Azadeh Nasser

Azari ("Azari") (collectively, the "Movants") to impose sanctions on Wansdown Properties

Corporation N.V. ("Wansdown" or "Debtor") and its counsel, Blank Rome LLP ("Blank Rome")

and Lawrence Flick, Esq. ("Flick"), pursuant to Rule 9011 of the Federal Rules of Bankruptcy

Procedure ("Fed. R. Bankr. P." or "Bankruptcy Rule"), Rule 11 of the Federal Rules of Civil

Procedure ("Fed. R. Civ. P." or "Rule"), 11 U.S.C. § 328(c) and 28 U.S.C. § 1927 (the "Sanctions

Motion").  Wansdown and Blank Rome filed oppositions to the Sanctions Motion, and Beekman

and Azari filed replies.[1]

---

[1] *See Wansdown Properties Corporation N.V. v. 29 Beekman Corp.*, 20-01056:

- *Notice of Joint Motion for Sanctions Under 11 U.S.C. § 105, 11 U.S.C. § 9011, 11 U.S.C. § 328(c) & 28 U.S.C. § 1927, and Based Upon a Claim for Fraud on the Court.*  (ECF No. 105).
- *Memorandum of Law in Support of 29 Beekman's Motion for Sanctions Against Lawrence Flick, Blank Rome, and Wansdown Properties.*  (ECF No. 106).
- *Affirmation of Seth Akabas.*  (ECF No. 107).
- *Declaration of Christopher Serbagi* and exhibits attached thereto.  (ECF No. 108).
- *Declaration of Nader Mobargha, Esq. in Support of Defendant Azadeh Nasser Azari and 29 Beekman Corp.'s Joint Motion for Sanctions Against Debtor Under 11 U.S.C. § 105, 11 U.S.C. § 9011, 11 U.S.C. § 328(c) & 28 U.S.C. § 1927, and Based Upon a Claim for Fraud on the Court* and exhibits attached thereto.  (ECF No. 109).
- *Memorandum of Law in Support of Defendants Azadeh Nasser Azari and 29 Beekman Corp.'s Joint Motion for Sanctions Against Debtor Wansdown Properties Corporation.*  (ECF No. 110).
- *Memorandum of Law of Wansdown Properties Corporation, N.V. and Blank Rome LLP in Opposition to 29 Beekman Corp.'s and Azadeh Nasser Azari's Motions for Sanctions.*  (ECF No. 114).
- *Memorandum of Law of Wansdown Properties Corporation, N.V. and Blank Rome LLP in Opposition to Azadeh Nasser Azari's Motion for Sanctions.*  (ECF No. 115).
- *Corrected Memorandum of Law of Wansdown Properties Corporation, N.V. and Blank Rome LLP in Opposition to 29 Beekman Corp.'s and Azadeh Nasser Azari's Motions for Sanctions.*  (ECF No. 116).
- *Reply Memorandum of Law in Support of 29 Beekman's Motion for Sanctions Against Lawrence Flick, Blank Rome, and Wansdown Properties.*  (ECF No. 128).
- *Reply Memorandum of Law in Further Support of Defendants Azadeh Nasser Azari and 29 Beekman Corp.'s Joint Motion for Sanctions Against Debtor Wansdown Properties Corporation, N.V.* (ECF No. 129).

The matter has been fully briefed and the Court has carefully considered the parties' submissions and arguments, as well as the record in these adversary proceedings and the record in Debtor's underlying bankruptcy case.  For the following reasons, the Sanctions Motion is denied without prejudice to Movants' already-preserved right to object to any future Blank Rome fee application, in full or in part, and without prejudice to future sanctions applications if warranted by evidence that may emerge later in the litigation.

## BACKGROUND[2]

The Court presumes the parties' familiarity with the facts and procedural history of these adversary proceedings and Debtor's bankruptcy case.  *See Memorandum of Decision and Order (i) Denying Motion for Summary Judgment by Defendant [ECF No. 53], and (ii) Granting Partial Summary Judgment in Favor of Plaintiff With Respect to First and Second Affirmative Defenses [ECF No. 56]*, dated November 7, 2022, in Adv. Pro. No. 19-1450 (ECF No. 87); *Memorandum Decision and Order Denying Cross-Motions for Summary Judgment*, dated October 5, 2020, in Adv. Pro. No. 20-1056 (ECF No. 60); and *Memorandum Decision and Order Granting in Part and Denying Part Motion for Reconsideration*, dated January 6, 2021, in Adv. Pro. No. 20-1056

---

- *Reply Declaration of Nader Mobargha, Esq. in Further Support of Defendant Azadeh Nasser Azari and 29 Beekman Corp.'s Joint Motion for Sanctions Against Debtor Under 11 U.S.C. § 105, 11 U.S.C. § 9011, 11 U.S.C. § 328(c) & 28 U.S.C. § 1927, and Based Upon a Claim for Fraud on the Court* and exhibits attached thereto. (ECF No. 130).

[2] The facts are taken from the pleadings, exhibits, and other papers submitted by the parties in these adversary proceedings as well as from the Debtor's bankruptcy case.  The Court has taken judicial notice of the contents of the docket in the Debtor's bankruptcy case and the dockets in these adversary proceedings.  *See In re Sun Property Consultants, Inc*., Case No. 8-16-72267, Adv. Pro. No. 8-19-08064, 2021 WL 3375831, at *1, n. 3 (Bankr. E.D.N.Y. Aug. 2, 2021) (citing *Teamsters Nat'l Freight Indus. Negotiating Comm.. v. Howard's Express, Inc. (In re Howard's Express, Inc.)*, 151 Fed. Appx. 46, 48 (2d Cir. 2005) (stating that courts are empowered to take judicial notice of public filings, including a court's docket); *MedMal Trust Monitor v. VIII SV5556 Lender, LLC (In re Saint Vincent's Catholic Med. Ctrs. of N.Y.)*, 440 B.R. 587, 599 (Bankr. S.D.N.Y. 2010) (taking judicial notice of the docket in the underlying bankruptcy case); *In re Campbell*, 500 B.R. 56, 59 n.7 (Bankr. D.N.M. 2013) (electing to take judicial notice of the entire file in the case for sake of completeness as a bankruptcy court has the inherent authority to take judicial notice of entries on its own docket).

(ECF No. 78).  Accordingly, the Court will provide background only to the extent necessary to decide the Sanctions Motion.

## A.  Facts Pertinent to the Parties' Disputes

Wansdown, incorporated in Curaçao in 1979, is wholly owned by a trust entitled Pelmadulla Stiftung ("Pelmadulla") formed under the laws of Lichtenstein and domiciled in Vaduz, Lichtenstein.  Wansdown was formed to, among other things, invest and manage the assets of Princess Achraf Pahlavi (the "Princess"), the twin sister of the late Shah of Iran.  The Princess fled Iran in 1978 during the Iranian revolution and spent time in various properties around the world.  Wansdown owned one such property:  29 Beekman Place in Manhattan, a seven-story luxury residential townhouse ("Townhouse").  The Townhouse was Wansdown's principal asset and place of business.

Gholam Reza Golsorkhi ("Golsorkhi") was hired by the Princess, in or about 1970, in Iran to manage her personal affairs.  When the Princess fled Iran in 1978, Golsorkhi continued to work for her in Europe and the United States.  Golsorkhi became a Managing Director of Wansdown in 1979 and routinely interacted with Pelmadulla on Wansdown's behalf.  In 1979, Golsorkhi hired Azadeh Nasser Azari ("Azari") to work for Wansdown as a secretary and she later became the office manager.  The Princess died on January 6, 2016.

On February 10, 2016, Golsorkhi signed an Affidavit of Confession of Judgment on behalf of Wansdown in favor of Azari (the "Affidavit").  The Affidavit states that Wansdown was confessing a judgment in favor of Azari in the amount of $9,000 per month for the remainder of Azari's life or a lump sum of $2.7 million, purportedly in exchange for Azari's prior loyalty to the Princess and Wansdown.  On February 12, 2016, Azari filed the Affidavit in the Supreme Court of the State of New York.  Based on the Affidavit, on April 21, 2016, the Clerk of the Court entered

a judgment in favor of Azari and against Wansdown in the amount of $2.7 million (the "Judgment").  The Judgment created a lien on the Townhouse.

On February 13, 2017, Wansdown, by Blank Rome, filed an action in the Supreme Court of the State of New York against Azari seeking to vacate the Judgment.  Azari moved to dismiss the complaint on the basis that Wansdown's controlling corporate documents gave Golsorkhi authority to bind Wansdown.  On October 17, 2017, the Supreme Court denied Azari's motion to dismiss.  Azari filed a Notice of Appeal of the Supreme Court's Order to the Appellate Division First Department.  The First Department reversed and dismissed Wansdown's complaint, holding that Wansdown's corporate documents refuted its claim that Golsorkhi lacked authority.  Upon remand to the Supreme Court, on November 22, 2018, Azari filed counterclaims against Wansdown and third-party claims against Pelmadulla and Golsorkhi.  Pursuant to a joint representation engagement letter dated April 20, 2018 Blank Rome agreed to represent Pelmadulla and Golsorkhi jointly with, and in addition to, its existing representation of Wansdown.  Blank Rome claims that under the express terms of the joint representation engagement letter, the joint representation was limited to only the prosecution of Wansdown's claims against Azari, the defense of Wansdown as a counterclaim defendant, and the defense of Pelmadulla and Golsorkhi as third-party defendants in Azari's state court action.

On or about September 25, 2019, Wansdown entered into a Residential Contract of Sale dated as of September 25, 2019 (the "Purchase Agreement") for the sale of the Townhouse to Beekman for $10.3 million.  Beekman delivered a down payment of $1,030,000 to be held in escrow.  The Purchase Agreement contemplated that Wansdown would file a chapter 11 case and obtain the bankruptcy court's approval of a sale pursuant to § 363 of the Bankruptcy Code or as part of a confirmed plan.  The parties also agreed that the Purchase Agreement was still binding

even in the absence of any bankruptcy proceeding.  A sale under § 363 (or outside of a bankruptcy case) rather than under a confirmed plan would have a significant financial impact on Beekman. New York State imposes a so-called "Mansion Tax" on conveyances of certain real estate.  Based on the $10,300,000 sale price, the Mansion Tax would total $334,750 and Beekman had agreed that it would be responsible for paying any Mansion Tax.  Important to the parties' dispute, Wansdown represented that the net proceeds of a sale under the Purchase Agreement would be sufficient to satisfy all claims against Wansdown and, as reasonably projected, Wansdown's contemplated estate in bankruptcy.  Beekman's obligation to purchase the Townhouse was subject to fulfillment of several conditions precedent, including the accuracy, as of the date of closing, of Wansdown's representations and warranties made in the Purchase Agreement.

On October 8, 2019 (the "Petition Date"), Wansdown filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code designated Case No. 19-13223 (the "Main Case"). Wansdown filed its bankruptcy case to stay a sheriff's sale of the Townhouse scheduled by Azari for October 9, 2019.

On October 16, 2019, Blank Rome wrote to Pelmadulla stating that it could no longer represent Pelmadulla in Azari's state court action because of Blank Rome's anticipated representation of Wansdown in its bankruptcy case as special litigation counsel.  On November 8, 2019, Blank Rome formally moved for leave to withdraw as counsel for Pelmadulla in the state court action, which motion was granted by order entered on February 7, 2020.

On October 14, 2019, Wansdown filed an application with this Court to retain Blank Rome as special litigation, real estate, and tax counsel effective *nunc pro tunc* to the Petition Date (the "Retention Application").  (Main Case, ECF No. 11).  The Retention Application is supported by a declaration made by Blank Rome partner Flick stating, among other things, the following:

- "based upon the information made available to Blank Rome, Blank Rome's analysis included an examination of the following parties: Debtor Wansdown Properties Corporation N.V.; professionals engaged by the Debtor in this chapter 11 case; current or former officers and directors of the Debtor (to the extent identified to Blank Rome); certain known unsecured creditors and equity interest holders of the Debtor; employees of the Office of the United States Trustee's Office for Region 2 involved in this case; and the Judges of the United States Bankruptcy Court for the Southern District of New York. Blank Rome's examination process is necessarily ongoing. Accordingly, if necessary, Blank Rome will supplement this Declaration as appropriate" (Decl., ¶ 6);

- "(b)ased on the database examination of the entities specified above, (Blank Rome has) concluded Blank Rome does not represent any entity in this chapter 11 case, which has an adverse interest in connection with the case. . . . It is possible Blank Rome may have represented or may continue to represent creditors or interest holders of the Debtor in matters unrelated to this chapter 11 case from time to time, but Blank Rome is not representing (and will not represent) any such persons in this chapter 11 case. While Blank Rome has taken all reasonable steps to ascertain whether current or recent clients are creditors of the Debtor, are affiliated with creditors of the Debtor, or are otherwise parties in interest, it is possible there may be relationships or connections of which Blank Rome is not aware through reasonable diligence," (Decl., ¶¶ 6, 7); and

- "(b)ased on the database examination of potential interested parties, as set forth above, we have concluded that, except as set forth in this Declaration, neither I, Blank Rome, nor any partner, of counsel or associate thereof has any connection with the Debtor, its creditors or parties in interest" and does not "presently represent() a creditor or equity interest holder of the Debtor, or a person otherwise adverse or potentially adverse to the Debtor or the Debtor's estate on any matter that is related to the Debtor or the Debtor's estate or, except as described above, on any matter that is unrelated to the Debtor or the Debtor's estate" (Decl., ¶¶ 8 and 9(a)).

After Blank Rome's retention as special counsel, during litigation between Debtor and Beekman, Beekman asserted that the declaration supporting the Retention Application failed to disclose Blank Rome's connections to Pelmadulla and Golsorkhi. Blank Rome claims that the omission occurred because the joint engagement letter was not entered into Blank Rome's conflict database and therefore did not appear in the result of a conflict check to check for connections within the meaning of Bankruptcy Rule 2014, performed at the time of the preparation of the

Retention Application.  Blank Rome further claims that Flick believed, albeit mistakenly, that the joint representation had concluded by the time he signed and submitted his declaration.  (*See* Main Case, ECF No. 120 ¶¶ 14-20) (Supplemental Declaration of Lawrence F. Flick II in Support of Debtor's [Retention] Application sworn to June 18, 2020 (the "Supplemental Declaration")).

On November 6, 2019, the Court entered an order setting December 31, 2019 as the last day to file a proof of claim against Wansdown.  On December 9, 2019, Wansdown filed its modified plan (the "Plan") and modified disclosure statement ("Disclosure Statement").  The Plan contemplated that Wansdown would sell the Townhouse to Beekman and the sale proceeds would be enough to pay all creditors in full except Golsorkhi, who had agreed to subordinate his asserted general unsecured claim in the approximate amount of $7.5 million to the payment of all other creditors.  On December 12, 2019, Azari filed a proof of claim alleging that she holds a secured claim in the amount of $3,605,152.23 based on the Judgment.  On December 12, 2019, the Court preliminarily approved the Disclosure Statement and set a hearing on confirmation of the Plan for January 14, 2020.  This schedule would allow Debtor to obtain a final, non-appealable order confirming the Plan by the January 31, 2020 deadline set forth in the Purchase Agreement.

In a series of emails from October through December 2019, Pelmadulla, Flick and Golsorkhi discuss:  (i) Blank Rome's legal representation of Pelmadulla, (ii) the status of Wansdown's bankruptcy; (iii) Pelmadulla's desire to be paid by the bankruptcy estate; and (iv) Flick's failure to inform Pelmadulla about the negotiation and execution of the Purchase Agreement.

On December 31, 2019, Pelmadulla filed a general unsecured proof of claim in the amount of $3,243,941.19 based on its purported loan to Wansdown (the "Pelmadulla Claim").  As a result, Debtor could not confirm the Plan that it had filed because, although Debtor disputed the

Pelmadulla Claim, the sale to Beekman would not generate sufficient proceeds to reserve for the Pelmadulla Claim. Debtor switched gears and decided to consummate the transaction with Beekman through a § 363 sale instead of under a confirmed plan. This turn had commercial consequence for Beekman because, if the sale could not be achieved through a confirmed plan, then Beekman would have to pay the Mansion Tax.

## B. Overview of the Parties' Adversary Proceedings

These facts, among others, have given rise to a series of adversary proceedings between the various parties now pending in this Court:

### 1. *Wansdown Properties Corporation N.V. v. Azari*, Adv. Pro. No. 19-1450

On December 18, 2019, Wansdown commenced an adversary proceeding against Azari alleging that its obligation to pay Azari's Judgment was a voidable transfer under 11 U.S.C. § 544(b) of the Bankruptcy Code. Following discovery, both parties filed summary judgment motions. Azari argued that Wansdown cannot make the showing required under § 544(b) because: (1) there is no creditor that held an unsecured claim that is "allowable" as is required to support Wansdown's entitlement to relief under § 544(b); and (2) even if such a claim were allowable, the Affidavit/Judgment is not a fraudulent transfer "voidable under applicable law," namely §§ 274 and 275 of New York's Debtor & Creditor Law as they existed at the time of the Affidavit/Judgment. The Court denied the summary judgment motion in November 2022, holding that material fact disputes precluded an award of summary judgment.

### 2. *Wansdown Properties Corporation N.V. v. 29 Beekman Corp.*, Adv. Pro. No. 20-1056; *29 Beekman Corp. v. Blank Rome*, Adv. Pro. No. 20-1063

Wansdown commenced Adv. Pro. No. 20-1056 on February 26, 2020 asserting claims for breach of contract based on Beekman's failure to close by February 15, 2020 and sought a declaratory judgment stating that (i) Debtor is entitled to retain Beekman's down payment of

$1,030,000 as liquidated damages, (ii) the down payment is property of Debtor's estate pursuant to § 541 of the Bankruptcy Code, and (iii) Beekman's right, title and interest in and to the down payment had been extinguished and terminated.    Beekman filed its own adversary proceeding, Adv. Pro. No. 20-1063, on March 23, 2020, asserting several causes of action centering on its demand to recover the down payment.    These adversary proceedings were procedurally consolidated by the Court on May 1, 2020.  A motion to dismiss Adv. Pro. No. 20-1063 is pending.

The parties subsequently filed cross-motions for summary judgment in Adv. Pro. No. 20-1056.  Debtor's motion asserted that Beekman breached the Purchase Agreement by failing to close by the adjourned final date.  Debtor also alleged that Beekman anticipatorily breached the Purchase Agreement on January 15, 2020 by stating it would terminate the Purchase Agreement if an order confirming a bankruptcy plan was not final and non-appealable by January 31, 2020. Beekman argued that it was not required to close by the adjourned final date, and instead, had until March 1, 2020 to perform.  Beekman also disputed that it anticipatorily breached the Purchase Agreement because it did not refuse to perform its obligations under the Purchase Agreement and Debtor is foreclosed from making the argument because it treated the Purchase Agreement as a valid contract after the alleged repudiation.  Beekman further argued that even if it had breached the Purchase Agreement, its non-performance was excused by Debtor's failure to show it was ready, willing and able to close.  Lastly, Beekman alleged that the Purchase Agreement was induced by fraud because Debtor failed to disclose the Pelmadulla Claim.

The Court denied both motions "because whether the Debtor was ready, willing and able to close following Beekman's breach presents a disputed issue of material fact."  (Adv. Pro. No. 20-1056, ECF No. 60).

3.  *29 Beekman Corp. v. Blank Rome*, Adv. Pro. No. 22-1075

Finally, on April 5, 2022, this Court opened Adv. Pro. No. 22-1075 in response to the District Court's order transferring a case that Beekman had commenced in New York state court. Beekman brought the case against Blank Rome for its alleged fraud and aiding and abetting of fraud in which it conspired with Golsorkhi and Wansdown to make false representations that persuaded Beekman to enter into the Purchase Agreement to its detriment.  Beekman alleged fraud and fraudulent concealment against Golsorkhi who it claimed participated with Blank Rome in the fraud against Beekman in order to enhance his own claim against Wansdown.

On July 29, 2022, Blank Rome and Golsorkhi both moved to dismiss the complaint on the ground that because the complaint's claims constituted a collateral attack on this Court's orders approving the sale of the Townhouse to Beekman under the Purchase Agreement and confirming Debtor's chapter 11 plan, the doctrine of *res judicata* precluded Beekman's attempt to relitigate matters already addressed by this Court.  Blank Rome and Golsorkhi also moved to dismiss Beekman's complaint pursuant to Fed. R. Civ. P. 12(b)(6)/Fed. R. Bankr. P. 7012(b).

These motions are the subject of a separate decision issued concurrently with this one.

## DISCUSSION

A.  **Jurisdiction**

This Court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2020 (Preska, C.J.).  Consideration of the Sanctions Motion is a core proceeding.  *See* 28 U.S.C. § 157(b)(2)(A) and (H).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. **Applicable Legal Standards and Application**

1. **11 U.S.C. §§ 327(e), 328(c) and Fed. R. Bankr. P. 2014**

Section 327 of the Code governs a trustee's or debtor-in-possession's employment of attorneys and other professional persons to represent or assist in carrying out duties under the Code. "While wide latitude is generally afforded to the trustee in the selection of professional persons to be employed, section 327(a) authorizes the employment of a professional person only if such person does not hold or represent an interest adverse to the state and is "disinterested," as that term is defined in section 101(14) of the Code." 3 Collier on Bankruptcy ¶ 327.01. The disinterestedness requirement of § 327(a) is subject to two limited exceptions. The first, relevant here, occurs whenever a trustee seeks to employ a debtor's former counsel for a specified special purpose, by providing that:

> (t)he trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

"The requirements for retention under § 327(a) that a professional not hold or represent an interest adverse to the estate apply equally to retention under § 327(e)," by ensuring that special purpose counsel are conflict-free as to the work they are retained to do. *In re JMK Constr. Grp., Ltd.*, 441 B.R. 222, 230-31 (Bankr. S.D.N.Y. 2010); *In re Homesteads Cmty. at Newtown, LLC*, 390 B.R. 32, 47-48 (Bankr. D. Conn. 2008) ("(I)n applying Section 327(a) . . . (to a "special counsel" situation, courts) should reason by analogy to (Section) 327(e), so that where the trustee seeks to appoint counsel only as 'special counsel' for a specific matter, there need only be no

conflict between the trustee and counsel's . . . client with respect to the specific matter itself")
(citation omitted).

Underscoring the importance of this limitation, "[s]ection 328(c) provides a 'penalty for
conflicts of interest' by authorizing the court to deny compensation for services and reimbursement
of expenses if the professional person is not disinterested or if such professional person represents
or holds an interest adverse to the estate on the matter on which such person is employed."  3
Collier on Bankruptcy ¶ 328.05 (Richard Levin and Henry J. Sommer eds., 16th ed. rev.).

Bankruptcy Rule 2014 dictates the manner in which the trustee actually requests the
employment of a professional person under § 327.  Rule 2014(a) requires that the trustee file with
the court an application specifying the

> . . . facts showing the necessity for the employment, the name of the person to be
> employed, the reasons for the selection, the professional services to be rendered,
> any proposed arrangement for compensation, and, to the best of the applicant's
> knowledge, all of the person's connections with the debtor, creditors, any other
> party in interest, their respective attorneys and accountants, the United States
> trustee, or any person employed in the office of the United States trustee. The
> application shall be accompanied by a verified statement of the person to be
> employed setting forth the person's connections with the debtor, creditors, any other
> party in interest, their respective attorneys and accountants, the United States
> trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

### 2.  **Application of Retention-Related Provisions**

Flick submitted a declaration in support of the Retention Application stating, among other
things, that neither the firm nor its attorneys "presently represent[] a creditor or equity interest
holder of the Debtor" or "has any other connection with the Debtor."  (Main Case, ECF 106 at 7-
8).  This sworn statement was concededly false, and Flick made it despite having, just four days
before, received at least one email from Pelmadulla concerning Wansdown and its impending
bankruptcy.  This email was one of a series of Flick's communications with Pelmadulla, bearing

an attorney-client privilege heading, and, at the time and until February 7, 2020, Blank Rome represented Pelmadulla in the state court litigation seeking to set aside Azari's Judgment.

Flick's misstatement reveals, at best, serious carelessness, and it goes to the heart of the retention approval process, which is a vital safeguard of the integrity of the bankruptcy process. 9 Collier on Bankruptcy ¶ 2014.03 ("The purpose of the application for authority to employ a professional is to provide the court . . . with information necessary to determine whether the professional's employment meets the broad tests of being in the best interest of the estate and . . . (is) necessary") (internal citation omitted). Flick stated in his Supplemental Declaration from June 18, 2020 that "(a)t the time I made my Declaration in support of the Retention Application (on October 14, 2019), I believed that Blank Rome was no longer representing Pelmadulla and that the State Court Action was stayed as against the Debtor." (Main Case, ECF No. 120 ¶ 16). Flick also cited his firm's failure to enter the Pelmadulla engagement into Blank Rome's conflict database. (*Id*. ¶ 17). But, even crediting Flick's representation that he believed Blank Rome no longer represented Pelmadulla, his extensive pre- and post-bankruptcy communications with Pelmadulla via email that were labeled privileged, as well as Blank Rome's longstanding representation of Wansdown, Pelmadulla, and Golsorkhi in state court litigation regarding the Judgment, surely was a "connection" that could and should have been disclosed, and his failure to realize this as the declarant is, at best, hard to understand.

The question is what, if anything, to do about it. Blank Rome correctly observes that the Retention Application misstatements resulted in a Court-approved stipulation with the United States Trustee by which Blank Rome agreed to a $500,000 reduction in its fees, and, further, the Court specified that its approval of that stipulation was without prejudice to any party's or the Court's own ability to object to future fee applications even net of such a discount. (Main Case,

ECF No. 220). Blank Rome is also correct that the undisclosed connections at issue are not necessarily disqualifying under § 327(e). However, § 328(c), and perhaps other applicable law, presumably induced Blank Rome to agree with the UST to reduce its fees by $500,000 in light of its inaccurate Retention Application. And further reductions or complete disallowance remain available in connection with any future fee application submitted by or on behalf of Blank Rome. The Court concludes that a remedy in the form of fee disallowance — partly already imposed along with the threat of future enforcement — is the appropriate response to Retention Application inaccuracies. In fact, this remedy is suggested by both Beekman (Adv. Pro. No. 20-1056, ECF No. 106 at 42) and Azari (*id*., ECF No. 110 at 41), specifically relying on § 328(c)).

The Court considers the substantial economic consequences to Blank Rome of a fee-based sanction to be the most appropriate and equitable means of dealing with the Retention Application-related misstatements, and to be most in keeping with the law governing the retention process. *Cf.* 9 Collier on Bankruptcy ¶ 2014.03. While Movants characterize Flick's statement as perjurious or fraudulent, the Court cannot conclusively determine that Flick made his misrepresentations knowing they were false, or intending to deceive. It is possible that Flick's misstatements were careless, inadvertent, or based on mistaken analysis – although any such error would reflect significant carelessness.

The additional relief sought by the Movants is not so keyed to Flick's retention-related misstatements, and, in the Court's view, is unnecessary as a further sanction in light of the substantial economic consequence to Blank Rome agreed to as part of its settlement with the United States Trustee. Movants' remaining complaints flow not from the Retention Application in isolation, but rather from an alleged extended course of conduct that may encompass the

retention, but that also includes subsequent (and to some extent prior) conduct. Those issues are discussed in the following section of this decision.

### 3. **11 U.S.C. § 105, Fed. R. Bankr. P. 9011 and 28 U.S.C. 1927**

Movants' remaining sanction demands are premised on an asserted long-running pattern of deceptive or inaccurate statements and omissions including assertedly false pre-bankruptcy representations that the contracted-for Townhouse sale proceeds of $10.3 million would satisfy all claims against Wansdown; inaccurately supported retention of Blank Rome; and Wansdown's pursuit of an early summary judgment motion in its adversary proceeding against Beekman.

"In the bankruptcy context, Bankruptcy Rule 9011 governs the conduct of attorneys and parties when filing papers with the court." *In re Sun Property Consultants, Inc.*, Case No. 8-16-72267, Adv. Pro. No. 8-19-08064, 2021 WL 3375831, at *4 (Bankr. E.D.N.Y. Aug. 2, 2021). "Bankruptcy Rule 9011 'parallels Federal Rule of Civil Procedure 11, containing only such modifications as are appropriate in bankruptcy matters'"). *Id*. (citing *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir. 1991). "The purpose of Fed. R. Civ. P. 11 'is to deter baseless filings' and 'streamline the administration and procedure of the federal courts.'" *Id*. "It does so by '[imposing] an 'affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading' before actually signing it." *Id*. When considering a motion for sanctions under Rule 11, courts in the Second Circuit apply an "objective unreasonableness" standard. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003).

Section 105(a) provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

"Section 105 may provide a basis to impose sanctions, but only against bad-faith conduct and only when it is tied to a specific provision of the Bankruptcy Code, 'rather than to further the purposes of the Code generally . . . and not merely [tied] to a general bankruptcy concept or objective.'" *Desiderio v. Parihk (In re Parikh)*, 508 B.R. 572, 596 (Bankr. E.D.N.Y. 2014) (quoting *In re Smart World Techs., LLC*, 423 F.3d 166, 184 (2d Cir. 2005)).

"A court may impose sanctions against an attorney pursuant to 28 U.S.C. § 1927 for bad faith conduct that is not necessarily 'entirely without merit' or tied to a specific Code provision, but which unnecessarily delays the proceeding." *In re Cartisano*, Case No. 8-18-70703, Adv. Pro. Nos. 8-18-08060/08061, 2019 WL 1028497, at * 4 (Bankr. E.D.N.Y. Mar. 4, 2019) (citing 28 U.S.C. § 1927). Section § 1927 of title 28 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "The Second Circuit has consistently held that the purpose of sanctioning an attorney for bad faith conduct under 28 U.S.C. § 1927 'is to deter unnecessary delays in litigation.'" *Id*. (citations omitted). Courts "must construe § 1927 'narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'" *Id*. (citations omitted).

The Sanctions Motion most prominently features allegations in the Adv. P. No. 20-1056 complaint, repeated in summary judgment papers including Debtor's Rule 7056.1 statement, that the filing of the Pelmadulla Claim on December 31, 2019 claim came without warning and was a surprise to Debtor and its counsel. There is no question that the Movants have identified email

correspondence pre-dating the December 18, 2019 complaint in Adv. P. No. 19-1450 and the summary judgment briefing in Adv. P. No. 20-1056 filed in the first half of 2020 — termed by Movants the "Smoking Gun" correspondence — making clear that Pelmadulla told Blank Rome that it believed Debtor owed it money and it viewed itself as a creditor of Debtor's.  While Movants, particularly Beekman, mischaracterize the communications as an instruction to Blank Rome to file a claim for Pelmadulla, the Court has identified no such express request or instruction in any of those emails.  Rather, the emails between Blank Rome and Pelmadulla could be read as Pelmadulla expressing its desire to have counsel for its bankrupt wholly owned subsidiary cause Pelmadulla to be listed in Debtor's schedules as a creditor.  In any event, the emails are inconsistent with Debtor's and Blank Rome's repeated statement that the Pelmadulla Claim came as a complete surprise.

The Sanctions Motion, however, exaggerates the significance to the litigation of the Pelmadulla emails between Pelmadulla and Blank Rome.  One key issue in the litigation is whether Blank Rome or Debtor knew as of the date Debtor entered into the Purchase Agreement — September 25, 2019 — that Debtor or Blank Rome believed Pelmadulla had a claim.  The Purchase Agreement refers to the ability to pay claims against the future Wansdown bankruptcy estate "as reasonably anticipated," which seemingly must be assessed as of September 25, 2019.  The relevant Pelmadulla emails that reference the debt Wansdown owed to Pelmadulla seem to begin on November 4, 2019, and none pre-date September 25, 2019, or fall approximately at that date.  Thus, the so-called "Smoking Gun" emails that form so much of the basis of the Sanctions Motion do not alone establish either fraudulent intent or knowledge as of the date of the Purchase Agreement.

Further, based on this Court's review of record materials including the transcript of the July 28, 2020 summary judgment argument (Adv. Pro. No. 20-1056, ECF No. 59), the inaccurate statement, while characterized in the Sanctions Motion as being of overwhelming significance, appears to have played a limited role in the summary judgment briefing. And, importantly, Debtor submitted a corrective statement and produced the supposed "Smoking Gun" emails on July 24, 2020, four days before the summary judgment hearing, and well before the Court decided the motions. (Adv. Pro. No. 20-1056, ECF No. 54). Indeed, on July 27, 2020, Beekman's counsel wrote a letter to the Court acknowledging its receipt of the "Smoking Gun" emails. (Adv. Pro. No. 20-1056, ECF No. 55). Yet, Beekman *did not* highlight those issues during the hearing or in post-hearing submissions.

The parties may also dispute whether the sale proceeds needed to cover all known or anticipated claims as of the sale closing date. But, if that question is material, it is not impacted by the misstatements on which the Sanctions Motion is based. That is because a representation as to whether the December 31, 2019 receipt of the Pelmadulla Claim was a surprise would have no bearing on the sufficiency of sale proceeds to cover claims that existed as of the intended sale closing date in early 2020.

In significant part for these reasons, which inform the following discussion of specific legal theories advanced by Movants, the Court denies without prejudice the Sanctions Motion insofar as it relies on what Beekman refers to as the "Smoking Gun" emails.

This conclusion is reinforced by another consideration. The Movants chose not to present testimony in support of their Sanctions Motion, instead relying primarily on documentary evidence and the record of prior proceedings. Debtor and Blank Rome contend that, at the time they made their pre-bankruptcy representations, they did not understand Pelmadulla to believe that it held

debt owed by Wansdown as opposed to an equity interest. They also contend that the misstatement referenced in the complaint and summary judgment papers was limited, inadvertent, and timely corrected. Many of Movant's contentions turn on questions of declarant intent or knowledge, and the existing documentary record does not at present create a clear enough evidentiary record to conclusively award sanctions on this basis.

Finally, Movants point to allegedly perjurious or false testimony of and statements by Golsorkhi at various dates, some during prior state-court litigation. The Court has considered these contentions and the conduct alleged, and concludes sanctions are not immediately warranted. Rather, the issues raised constitute matters appropriately presented, if at all, at trial going to the merits of the parties' respective contentions.

4. **Application of Other Sanctions Theories**

　　a. **Fraud on the Court/Request for Sanctions Pursuant**
　　　**The Court's Inherent Power and 11 U.S.C. § 105**

Movants fail to establish a fraud on the Court. Blank Rome and Debtor emphasize that there is an "extremely high" threshold for finding a fraud on the court and issuing sanctions on that basis. (Adv. Pro. No. 20-1056, ECF 114 at 11 (quoting *United States v. Seltzer*, 227 F.3d 36, 41 n.2 (2d Cir. 2000)). Typically, a fraud on the court occurs where "clear and convincing evidence" shows "'that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by . . . unfairly hampering the presentation of the opposing party's claim or defense.'" *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010) (citations omitted). Common scenarios involve fabrication or intentional spoliation of evidence. These elements are not satisfied here; there is no clear and convincing evidence of a scheme to prevent impartial, evidence-based adjudication of the parties' dispute, much less that such a scheme was adopted by design.

Relatedly, Movants have not established perjury despite their repeated invocation of that term, because perjury constitutes false testimony relating to a "material matter with the willful intent to give false testimony and not because of confusion, mistake or faulty memory." *In re Berger Indus., Inc.*, 298 B.R. 37, 43 (Bankr. E.D.N.Y. 2003) (citation omitted). Movants have not established a willful state of mind on the part of any declarant and that alone precludes a finding of perjury. And, there can have been no fraud on the Court based on representations that were contradicted by the so-called "Smoking Gun" emails because the inaccurate statements were corrected before argument on the summary judgment motions, and because the emails themselves were produced before the hearing on those motions, with Beekman having the opportunity to make arguments or seek reconsideration based on those emails either before or after the Court's decision. In fact, Beekman alerted the Court to the emails before argument on the motions.

### b.  Request for Sanctions Pursuant To 11 U.S.C. § 105 Alone

Azari proposes a grant of sanctions based on Bankruptcy Code § 105(a). But the Court agrees with Debtor and Blank Rome that it is appropriate to impose sanctions on this basis only as to "bad-faith conduct" that is "tied to a specific provision of the Bankruptcy Code." *In re Parikh*, 508 B.R. at 596-97). No such showing has been made either as to any declarant's state of mind or as linked to a specific Bankruptcy Code provision.

### c.  Award of Fees Pursuant to Rule 9011 and/or 28 U.S.C. § 1927

No fee award is appropriate at this time pursuant to either of these provisions, subject to reopening if evidence showing intentional or knowing misstatements coupled with demonstrable prejudice or resulting expenses. But the Court does question whether the statements made in the complaint and in the summary judgment papers that the Pelmadulla Claim was unexpected

complied with Rule 9011 when those statements were made.   Rule 9011(b) states that by "presenting to the court . . . a . . . pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," (3) "the allegations and other factual contentions have evidentiary support. . . ." Fed. R. Bankr. P. 9011.  Inquiry reasonable under the circumstances would have revealed the inaccuracy of the statement in the complaint and in the summary judgment motion papers that the Pelmadulla Claim was wholly unexpected.

That alone, however, does not establish entitlement to sanctions for a Rule 9011 violation. In fact, Rule 9011(c)(1)(A) imposes a mechanism for counsel to receive service of a sanctions motion and to have an opportunity to "withdraw[]" or "appropriately correct []" the challenged submission; here, Blank Rome corrected the statement before any sanctions motion was filed.

Further, the entitlement to sanctions is never automatic.  Rather, the Court "may" in its discretion, subject to rule-specified requirements, impose sanctions.  *See* Rule 9011(c).  Any such sanction "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." *Id*.  Here, on account of Flick's misstatement in the Retention Application, Blank Rome is already suffering, at a minimum, a $500,000 reduction in its fees, with further reductions possible.  That along with the mere existence of this decision's findings is an ample deterrent for similar future conduct, and the Court does not perceive Movants as having incurred fees specifically attributable to the retention of Blank Rome.

As to the misstatement of a specific fact in both the complaint and the summary judgment briefing, the Court has not detected a discernible incurrence of fees by either Movant based on that isolated assertion of fact, while Debtor, through counsel, corrected the misstatement prior to argument on the motion.  The Court concludes that no economic or other sanction is warranted

given the limited impact of the misstatement, and given its belated correction as argument on the motion approached.

Meanwhile, § 1927 permits the Court to award fees and other costs against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Movants have not shown that Blank Rome or its attorneys engaged in conduct that rises to this sanctionable level. Rather, Flick made an inaccurate statement in support of Blank Rome's Retention Application but not of a clearly disqualifying fact. And the inaccurate but limited statement in the complaint and summary judgment papers was discrete, non-dispositive, and, in any event, corrected prior to argument. The litigation proceeded and did not turn on the specific representation that has been shown to be inaccurate.

The Court also rejects Beekman's demand that the prior summary judgment decision be vacated pursuant to Fed. R. Civ. P. 60(d)(3), which preserves a court's ability to vacate prior judgments or orders that result from "fraud on the court." As noted above, no such fraud has been established. To the extent Beekman might also seek relief under Rule 60(b)(3), any such application is untimely because the relevant decision occurred more than a year ago. Moreover, the alleged "Smoking Gun" emails were in fact produced in discovery and available prior to entry of the Court's summary judgment decision.

### d. Request to Re-Open Discovery

This request is denied as Beekman premises its application heavily on Fed. R. Civ. P. 37 discovery sanction authorities which are inapposite because Beekman has established no failure of Debtor to meet its discovery obligations. Nor has Beekman shown a violation of the crime-fraud exception to otherwise-applicable privileges of unproduced privileged communications. Based on *in camera* review ordered at the time of oral argument, Blank Rome's withheld communications

concern already-known subjects and do not evidence anything the Court has identified as criminal misconduct or an intent or knowing effort to further a fraud.

### e.  Request for Appointment of an Examiner

Azari requests the appointment of an examiner to investigate what she terms Debtor's and Blank Rome's "undisputed perjury and violation of 18 U.S.C. § 1621."  (Adv. P. No. 20-1056, ECF No. 110 at 43).   As Azari acknowledges in her reply to Debtor's and Blank Rome's opposition, § 1104(a) of the Bankruptcy Code authorizes appointment of an examiner only "before confirmation of a plan" and  the plan has been confirmed here.  (Adv. P. No. 20-1056, ECF 129). Azari urges the Court to nevertheless take some equivalent step using its "inherent power under Section 105."  (Adv. P. No. 20-1056, ECF 129 at 20.)  The Court declines to take this step given courts' typical, and appropriate, reluctance to award sanctions or impose remedies that are not linked to other applicable provisions of the Code, Rules, or other law.

Finally, to the extent any arguments or assertions have not been addressed in this decision, the Court nevertheless has considered them, and found that they do not support the relief sought at this time.

Accordingly, the Court concludes that an award of sanctions beyond the already-imposed reduction in Blank Rome's fees is unwarranted, at a minimum, at this stage.

### <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** the Sanctions Motion, without prejudice to the Movants' already-preserved ability to object to all or some of any future fee applications filed by Blank Rome in light of the inaccurate statements in the Blank Rome Retention Application, and without prejudice to further applications to the extent warranted in light of facts that may emerge at trial in any of the adversary proceedings implicated by this motion.

It is **SO ORDERED.**


Dated: New York, New York                    *s/ David S. Jones*
      March 31, 2023                    HON. DAVID S. JONES
                                     UNITED STATES BANKRUPTCY JUDGE